# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 12-357

**STATE OF LOUISIANA**

**VERSUS**

**JEREMIAH R. TENO**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. CR-2010-701
HONORABLE C. KERRY ANDERSON, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**J. DAVID PAINTER**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Marc T. Amy, and J. David Painter, Judges.

**CONVICTIONS AFFIRMED;**
**ENHANCED SENTENCES VACATED**
**AND REMANDED FOR RESENTENCING.**

**Beth Fontenot**
**P. O. Box 3183**
**Lake Charles, LA  70602**
**(337) 491-3864**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     Jeremiah R. Teno


**Honorable David W. Burton, District Attorney**
**Beauregard Parish**
**P. O. Box 99**
**DeRidder, LA  70634**
**(337) 463-5578**
**COUNSEL FOR APELLEE:**
     State of Louisiana

**PAINTER, Judge.**

Defendant, Jeremiah R. Teno, appeals his convictions on the charges of possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1 (Count 1); illegal use of weapons or dangerous instruments, a violation of La.R.S. 14:94F (Count 2); and aggravated assault with a firearm; a violation of La.R.S. 14:34.4 (Count 3); as well as his sentencing for those three convictions as a habitual offender. For the following reasons, we affirm his convictions. However, we vacate the enhanced sentences for the offenses of possession of a firearm by a convicted felon and aggravated assault with a firearm because those enhancements were not sought in the multiple offender bill. Therefore, this case is remanded for resentencing on those convictions.

## FACTS AND PROCEDURAL HISTORY

On June 15, 2010, Patrolman Tracy Crouch of the DeRidder Police Department received two 911 calls from Auburn Place Apartments. The callers reported "pops" that sounded like gunshots or firecrackers. One of the callers said: "they know who it is," but the caller did not identify anyone.

Skylor Johnson, age sixteen at the time of trial, was babysitting for Olivia Martin at the apartments on the day of the incident. Her brother, Roman Johnson, was involved in an altercation or argument with Defendant that morning. Before 4:30 p.m., Ms. Johnson went outside, and "[Defendant] and two more cars pulled up." Defendant got out of his car and stood around for fifteen to twenty minutes. Defendant then said, "[w]e'll dump on y'all," ran to his car, and got a black, "medium-sized gun." Ms. Johnson held her hands six to eight inches apart when she described the gun. The day after the incident, she chose Defendant from a photo lineup.

Ms. Martin arrived home around 2:00 p.m. that day. "Around four-something," Ms. Martin "saw cars had pulled up and . . . it looked like a commotion was about to

happen." She saw Defendant get out of one car, and residents of the complex began to gather outside. After words were exchanged and Catissue Hayes, Defendant's girlfriend, pushed Ms. Johnson, Defendant reached into one vehicle, got a black handgun, "and started shooting . . . [n]ot specifically aiming anywhere, just shooting everywhere." Ms. Martin had her nine-week-old daughter in her arms and "took off running." She was "grazed" on the foot by a bullet. She further testified that after the shooting, there was a "bullet hole in the wall on the left side of the building."

Ms. Martin identified Defendant from a photo lineup. She also identified Defendant at trial as the person who fired the weapon. She had never seen Defendant before the day of the shooting.

Eight-year-old Diamond Banks also identified Defendant from a photo lineup as the man "who did it." At trial, however, she looked around the courtroom and did not see the man. Tervell Roberson and Crystal Banks also identified Defendant from photo lineups.

Jennifer Puckett also lived at the apartment complex and saw the incident. She identified Defendant as being involved in the arguing. The commotion ended when Defendant "just went to a car and just pulled out a gun and just started shooting."

Lieutenant Shane Fruge of the DeRidder Police Department prepared the photo lineup and showed it to seven witnesses. Five of them identified Defendant from the lineup; the other two did not identify anyone. No one ever identified anyone other than Defendant as the shooter. A security video from the apartment complex did not show anyone shooting a weapon. Attempts to lift fingerprints from the shell casings were unsuccessful. Nothing in Lieutenant Fruge's investigation indicated that any person other than Defendant shot a gun.

Ms. Hayes, the mother of Defendant's child, testified as a defense witness. She went to the apartment complex twice on the day of the shooting, the first time around noon and the second time "around four-thirtyish, maybe." The first time, she was

2

arguing with Mr. Johnson "about an altercation that happened the night before." The second time, she and Defendant argued "about him being there." Although she saw who fired the gunshots, she had never seen the shooter before, and she did not know his name. Ms. Hays said that the shooter was not Defendant and that, in fact, Defendant "put his arms over [Hayes] as [they] ducked." Ms. Hayes, Defendant, Ms. Johnson, Ms. Martin, Thea Hall, and Mr. Roberson were standing together, to the left of the single-story building. Ms. Hayes described the shooter as "a black, skinny guy with a tattoo on his neck" and said that he stood "closer to the cars." Ms. Hayes admitted that she lied to police and told them that she did not see anything "[b]ecause we were afraid for our family."

Mr. Roberson also testified for the defense. He was in jail for fighting in Lake Charles at the time of trial. Mr. Roberson had seen Defendant before, but he did not know him. He testified that he did not see Defendant with a gun and that he did not see him shoot a gun. Mr. Roberson and Defendant were "face-to-face" when Mr. Roberson heard gunshots; if Defendant had shot the gun, "[h]e would have . . . blew my brains out right there." He testified that "somebody with [Defendant] saw [Mr. Roberson] was going to hit him, and they went to shooting."

Nevertheless, Mr. Roberson chose Defendant from a photo lineup and "said he's the shooter." Mr. Roberson said that he did so because he really wanted to go home and didn't care. His aunt pressured him to identify Defendant as the shooter. At trial, he testified that what he told the police was "not the real story."

Defendant testified as the last witness at trial. He was convicted of unauthorized use of a vehicle in 2005. In 2006, he was convicted of attempted possession of Alprazolam, and he also had a marijuana conviction. Defendant stated that he pled guilty to those charges because he was actually guilty. He testified that he was not guilty of the charges at issue in this case.

3

Defendant testified that around 11:00 a.m. to noon on June 15, 2010, he went with Ms. Hayes and her sister to the Auburn Place Apartments. Defendant left and returned around 4:00 p.m. after he received a call from Mr. Johnson suggesting they "squash" their misunderstanding. He did not shoot a firearm at the complex. He testified that someone named Tristan was the shooter.

Defendant stated that he and Mr. Johnson were about to fight, and "when the gunshots rang off," Ms. Hayes tried to get him into the car to leave. He testified that they were standing by the single-story area of the complex to the side of the breezeway. When Defendant spoke to police after the incident, he said that he did not know the shooter. He testified that he "technically" did not know the shooter, but he knew the shooter's first name. A search of Defendant's residence and the vehicles at the residence three days after the incident revealed no gun.

Lieutenant Fruge testified on rebuttal that Defendant never said who he thought fired the shots. Defendant said that the shots were fired from behind him while he was standing in the parking lot, which was inconsistent with the other witnesses' testimony. Defendant's testimony that he arrived at the complex alone was also inconsistent with the other testimony.

Defendant was charged with possession of a firearm by persons convicted of certain felonies, a violation of La.R.S. 14:95.1 (Count 1); illegal use of weapons or dangerous instruments, a violation of La.R.S. 14:94(F) (Count 2); and aggravated assault with a firearm, a violation of La.R.S. 14:37.4 (Count 3). The State filed a habitual offender bill of information, alleging prior convictions for attempted possession of Alprazolam on October 4, 2006, and attempted unauthorized use of a movable on December 1, 2005. The State amended the habitual offender bill to allege Defendant's fourth felony offender status based on an additional conviction on January 8, 2008, for second offense possession of marijuana. Both the original and

4

amended bills sought enhancement of the sentence for the conviction for illegal use of weapons.

At the beginning of the trial, the parties stipulated to Defendant's October 4, 2006 guilty plea to attempted possession of Alprazolam in Vernon Parish. Defendant's probation officer for that conviction, Charles Williams, testified at trial that he supervised Defendant's probation on that charge. Defendant signed his conditions of probation on March 6, 2007, which informed him that he could not carry a firearm.

The jury found Defendant guilty on all three counts. At a hearing after trial, the State presented evidence of Defendant's prior conviction for second offense possession of marijuana on January 8, 2008, in St. Mary Parish; attempted possession of Alprazolam on October 4, 2006, in Vernon Parish; and unauthorized use of a movable on December 1, 2005, in Vernon Parish. The trial court found that the evidence was sufficient to establish Defendant's felony record. The trial court found that the sentencing range was a minimum of twenty years and a maximum of life imprisonment on each of the three counts. The trial court then sentenced Defendant to twenty-eight years at hard labor on each count. The trial court imposed sentences on the charges of possession of a firearm by a person convicted of certain felonies and illegal use of weapons or dangerous instruments without benefit of probation, parole, or suspension of sentence. He imposed the sentence on the charge of aggravated assault with a firearm, pursuant to the habitual offender statute, La.R.S. 15:529.1, without benefit of probation or suspension of sentence. The sentences were to run concurrently with each other but consecutively to any other sentences.

Defendant filed a motion to reconsider his sentences, which was denied by the trial court. This appeal followed.

5

**DISCUSSION**

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there is one error patent which is also raised as error by Defendant in his appeal. Defendant argues that the trial court erroneously imposed enhanced sentences. The State agrees regarding this error as to Counts 1 and 3.

The amended habitual offender bill alleged that there were three convictions involved in this appeal in addition to prior convictions for second offense possession of marijuana, attempted possession of Alprazolam, and attempted unauthorized use of a movable. However, the bill asked the court to enhance only Defendant's "present conviction for Illegal Use of Weapons (R.S. 14:94F) as a fourth-felony offender." At sentencing, however, the trial court enhanced all three April 21, 2011 convictions.

A defendant must be charged with criminal conduct through either a bill of information or indictment. La.Code Crim.P. art. 382. The State did not request enhancement of Defendant's other charges. Therefore, we find that Defendant's adjudication on charges where adjudication was not requested is a violation of La.Code Crim.P. art. 382.

Further, Defendant's sentences on the charges of possession of a firearm by a felon and aggravated assault with a firearm are illegal. The sentencing range for a violation of La.R.S. 14:95.1 (the possession charge) is ten to twenty years at hard labor without benefit of probation, parole, or suspension of sentence and a fine of one thousand to five thousand dollars. The sentencing range for a violation of La.R.S. 14:37.4 (the assault charge) is imprisonment with or without hard labor for up to five years and/or a fine of up to five thousand dollars.

The trial court sentenced Defendant to twenty-eight years on each count. We find that these sentences are illegal for the unenhanced charges of possession of a

firearm by a convicted felon and aggravated assault with a firearm. Accordingly, we vacate the sentences on these two charges and remand this matter for resentencing on these charges.

*Sufficiency of the Evidence*

Defendant, through counsel, claims that the evidence was insufficient to find him guilty of illegal use of weapons. In his *pro se* Assignment of Error No. 3, Defendant argues that the evidence was insufficient to convict him on all counts. In his *pro se* Assignment of Error No. 4, Defendant argues that the State erred in charging him and failed to prove its case beyond a reasonable doubt. To the extent that Defendant's *pro se* assignments of error address the issue of sufficiency of the evidence, they are included in the following discussion.

The standard of review in a sufficiency of the evidence claim is "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged." *State v. Leger*, 05-11, p. 91 (La. 7/10/06), 936 So.2d 108, 170, *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279 (2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979); *State v. Captville*, 448 So.2d 676, 678 (La.1984)). The *Jackson* standard of review is now legislatively embodied in La.Code Crim.P. art. 821. It does not allow the appellate court "to substitute its own appreciation of the evidence for that of the fact-finder." *State v. Pigford*, 05-477, p. 6 (La. 2/22/06), 922 So.2d 517, 521 (citing *State v. Robertson*, 96-1048 (La. 10/4/96), 680 So.2d 1165; *State v. Lubrano*, 563 So.2d 847, 850 (La.1990)). The appellate court's function is not to assess the credibility of witnesses or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So.2d 442.

The fact finder's role is to weigh the credibility of witnesses. *State v. Ryan*, 07-504 (La.App. 3 Cir. 11/7/07), 969 So.2d 1268. Thus, other than insuring that the sufficiency evaluation standard of *Jackson* is met, "the appellate court should not

7

second-guess the credibility determination of the trier of fact," but rather, it should defer to the rational credibility and evidentiary determinations of the jury. *Id.* at 1270 (quoting *State v. Lambert*, 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27). Our supreme court has stated:

> However, an appellate court may impinge on the fact finder's discretion and its role in determining the credibility of witnesses "only to the extent necessary to guarantee the fundamental due process of law." *State v. Mussall,* 523 So.2d 1305, 1310 (La.1988). In determining the sufficiency of the evidence supporting a conviction, an appellate court must preserve " 'the factfinder's role as weigher of the evidence' by reviewing 'all of the evidence . . . in the light most favorable to the prosecution.' " *McDaniel v. Brown,* 558 U.S. 120, ___, 130 S.Ct. 665, 674, 175 L.Ed.2d 582 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). When so viewed by an appellate court, the relevant question is whether, on the evidence presented at trial, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. Applied in cases relying on circumstantial evidence, . . . this fundamental principle of review means that when a jury "reasonably rejects the hypothesis of innocence presented by the defendant[ ], that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt." *State v. Captville,* 448 So.2d 676, 680 (La.1984).

*State v. Strother*, 09-2357, pp. 10-11 (La. 10/22/10), 49 So.3d 372, 378.

Count 2 charged Defendant with illegal use of weapons by discharging a firearm while committing or attempting to commit aggravated criminal damage to the Auburn Place Apartments, wherein it was foreseeable for human life to be endangered. "Aggravated criminal damage to property is the intentional damaging of any structure . . . wherein it is foreseeable that human life might be endangered, by any means other than fire or explosion." La.R.S. 14:55. Defendant argues that the only evidence to support this charge "was testimony that [he] shot a small handgun without aiming and that after the shooting there was an 'impact area' in the apartment building." He claims that "[t]here was no evidence that there were people present in or around the apartment building near the 'impact area' or that [he] knew or should have known that there were people in that area of the building.

8

In fact, Ms. Martin identified a hole in the side of the building that was not present before the shooting. She was standing in the parking lot when the shooting began. As she "took off running," she was struck in the foot "right before [she] stepped on the sidewalk." Others testified that they were also in the parking lot.

Lieutenant Fruge testified that he found two .40-caliber Smith and Wesson shell casings and a bullet fragment in the parking lot between the single-story building and the two-story breezeway of the apartment complex. The location of the fragment was consistent with what the witnesses said about where the suspects were parked and the trajectory of the shooting. The bullet fragment was shiny, indicating it had not been there a long time. The shell casings were found where the witnesses said the shooter was standing. An impact area contained a fresh gouge mark in the concrete consistent with ricochet. Another impact area was "the siding portion of the outer wall of the apartment complex on the two-story" building. That area was three or four feet from a window, five feet from the ground.

We find that the evidence sufficiently showed that the impact area on the building resulted from the shooting on June 15, 2010. Testimony at trial included five people identifying Defendant as the shooter in a photo lineup. Two of those witnesses also identified Defendant at trial. Further, we find that the evidence was sufficient to identify Defendant as the person who shot the gun, caused damage to the structure, and wounded Ms. Martin. Thus, counsel's argument contending insufficient evidence to convict Defendant of illegal use of weapons lacks merit.

Regarding Defendant's conviction for possession of a firearm by a person convicted of attempted possession of Alprazolam, the evidence of Defendant's prior conviction was clear. As discussed above, the evidence also clearly established that Defendant possessed and fired the .40-caliber weapon on June 15, 2011. Thus, we find that the evidence sufficiently established the elements of this offense. La.R.S. 14:95.1. Additionally, "aggravated assault with a firearm" is the attempt to

intentionally use "force or violence upon the person of another" by the discharge of a firearm. La.R.S. 14:33, 14:36, and 14:37.4. Defendant discharged a firearm and struck Ms. Martin; he also endangered the infant that Ms. Martin was holding, Ms. Johnson, and everyone else in the area of the shooting. Defendant's *pro se* argument also lacks merit.

*Ineffective Assistance of Counsel*

Defendant argues that his trial counsel, Leslie Leavoy, was ineffective. He cites three instances: Mr. Leavoy did not follow through by filing a writ application for review of the trial court's denial of his request for a stay of proceedings; he failed to ask for the removal of a juror after Defendant mentioned he knew her; and he failed to impeach witnesses Johnson and Roberson.

The issue of ineffective counsel is more appropriately addressed in an application for post-conviction relief, where an evidentiary hearing can be conducted in the trial court. *State in the Interest of A.B.*, 09-870 (La.App. 3 Cir. 12/9/09), 25 So.3d 1012. However, where an ineffective assistance claim is raised on appeal, this court may address the merits of the claim if the record discloses sufficient evidence to rule on it. *Id.* If this court considers a claim of ineffective counsel on appeal, Defendant must satisfy a two-part test. He must first show that counsel's performance was deficient and next, that the deficiency prejudiced him. St*rickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984).

Defendant alleges that he told his attorney that he knew a juror. In fact, the record shows that one of the jurors, a Mr. Washington, said in *voir dire* that he did not know any of the witnesses because he did not recognize any of the names. However, after Ms. Puckett testified, Mr. Washington realized that he recognized her face and so informed the trial court. Defense counsel had no objection and commented that he thought the fact that Mr. Washington knew her was "beneficial to the defense." After

a discussion with his client, Defendant agreed.  As such, we find that Defendant's alleged error is not factually supported by the record.

However, the record on appeal is not sufficient to determine whether counsel was ineffective with regard to the failure to file a writ application seeking a stay of the proceedings or the failure to impeach witnesses.  Determination of those issues may require testimony from defense counsel at an evidentiary hearing limited to those two claims.  Thus, Defendant's allegation of ineffective assistance of counsel based on those issues should be relegated to post-conviction relief.

*Photographic Evidence*

Defendant argues that the State was erroneously allowed to introduce his picture from a prior arrest into evidence.  The trial court allowed the photograph "not to prove the character of the person in order to show that he acted in conformity therewith, but for the other purposes as allowed under the Code of Evidence, including proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident."

Deputy Christopher Ryan of the Calcasieu Parish Sheriff's Office testified that he was working an "off-duty security job at a club in Lake Charles" on July 8, 2007.  A security officer of the club informed him and other deputies about "a guy inside the club that had a gun."  Deputy Ryan and the others approached the man, intending to escort him out of the club.  He testified that they had to wrestle him down.  Another officer removed a loaded gun from the man's pocket.  A photographer inside the club had taken a picture earlier that evening of a group of people, and one had the "gun hanging out of his waistband."  Deputy Ryan identified Defendant as the man with the gun.

Defendant objected to the introduction of the photograph into evidence.  Nevertheless, he asked for it to be published to the jury. The State elected to present the photograph, its own exhibit, at the close of Defendant's cross-examination.  At

11

that time, the State moved to publish the exhibit, and Defendant "join[ed] in that motion."

Defendant stated that he never owned or possessed a .40-caliber pistol. He explained the photograph from the club as an incident where:

> And the way I ended up getting the gun, somebody was about to do something stupid with the gun. And the way the police found out, I kind of took the gun from the person, and we kind of tussled, friendly tussled for it; and it dropped to the floor. And we was right in front of the camera booth where they hang up the pictures where we take them. And I stupidly just put the picture there and – well, put the gun there and took the picture with it. But I was actually saving a worser incident than me going to jail from happening.

Defendant testified the charge that resulted "was left at no disposition," but he served thirty months of incarceration as a parole violation because of the incident.

"An error is harmless if it is unimportant in relation to the whole and the verdict rendered was surely unattributable to the error." *State v. Koon*, 96-1208, p. 9 (La. 5/20/97), 704 So.2d 756, 763, *cert. denied*, 522 U.S. 1001, 118 S.Ct. 570 (1997). Any error in the admission of the photograph was harmless error in this case.

As discussed earlier, evidence at trial showed that five witnesses identified Defendant as the shooter from a photo lineup. Damage to the apartment building was not present prior to the shooting. Ms. Martin was injured as a result of the shooting. We find that the evidence, absent the photograph of Defendant on an earlier occasion with a gun at a club, was sufficient to sustain his conviction of these crimes. Even if the trial court erred in admitting the photograph, we find that the verdict was not attributable to the error in light of the other evidence of guilt.

*Prejudicial Statements*

In this assignment of error, Defendant argues that the trial court erroneously admitted prejudicial statements from the State's witnesses. The statements he mentions refer to: (1) Ms. Johnson's testimony that Mr. Roberson said that Defendant had "choppers;" (2) Mr. Roberson's testimony that he and Defendant were arguing

"face to face" at the time of the shooting, that he would have been shot if Defendant had been the shooter, that he identified Defendant from the photo lineup at his aunt's urging, and that he went along with her request so he could go home: (3) Dymon Banks was playing outside at the time of the shooting but could not identify Defendant at trial; (4) Lieutenant Fruge's testimony that he did not see Defendant shooting a weapon and that he told witnesses who viewed the photo lineup Defendant may or may not be in it; (5) Two witnesses did not identify Defendant from the photo lineup.

In fact, Ms. Johnson testified that her "cousin Tervell said, 'We got choppers.'" According to Defendant's counsel, "choppers" are AK-47 firearms. Defendant incorrectly states the facts because Ms. Johnson's testimony was that Mr. Roberson said that he, not Defendant, had the firearms. Regarding Mr. Roberson's testimony, it tended to show that Defendant was not the person who fired the shots and was actually helpful, not prejudicial, to Defendant. Defendant has not shown how any of these instances prejudiced him. Indeed, each seems to favor his position rather than prejudice it. We find that this argument lacks merit.

*Failure to Find the Weapon*

In addition to his argument that the reasonable doubt standard was not met, Defendant claims that he was erroneously charged because police found no weapon or gun at the scene of the shooting and because the shell casings police recovered had no fingerprints on them. The presence of a weapon or fingerprints is not an essential element to any of the crimes for which Defendant was charged or convicted. We have already discussed the elements of each crime and the sufficiency of the evidence, which inherently includes reasonable doubt. This argument also lacks merit.

**DECREE**

For the foregoing reasons, Defendants convictions are affirmed. His sentence on the charge of illegal use of weapons or dangerous instruments is also affirmed.

13

The enhanced sentences for the offenses of possession of a firearm by a convicted felon and aggravated assault with a firearm are vacated because those enhancements were not sought in the multiple offender bill. We remand this case for resentencing on those convictions.

**CONVICTIONS AFFIRMED; ENHANCED SENTENCES VACATED, AND REMANDED FOR RESENTENCING.**