STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT


10-112


STATE OF LOUISIANA

VERSUS

TRAVIS DEWAYNE MEGASON


**********


APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 64797
HONORABLE STEPHEN BRUCE BEASLEY, DISTRICT JUDGE


**********


ULYSSES GENE THIBODEAUX
CHIEF JUDGE


**********


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Oswald A. Decuir, and
James T. Genovese, Judges.

**CONVICTION REVERSED.  JUDGMENT OF
ACQUITTAL ENTERED.**


Don M. Burkett
District Attorney - Eleventh Judicial District Court
P. O. Box 1557
Many, LA 71449
Telephone:  (318) 256-6246
COUNSEL FOR:
        Plaintiff/Appellee - State of Louisiana


Paula Corley Marx
Louisiana Appellate Project
P. O. Box 80006
Lafayette, LA 70598-0006
Telephone:  (337) 991-9757
COUNSEL FOR:
        Defendant/Appellant - Travis Dewayne Megason

**Ronald D. Brandon**
**Assistant District Attorney - Eleventh Judicial District Court**
**P. O. Box 216**
**Many, LA 71449**
**Telephone: (318) 256-5910**
**COUNSEL FOR:**
 **Plaintiff/Appellee - State of Louisiana**

**THIBODEAUX, Chief Judge.**

After a bench trial, Defendant, Travis Dewayne Megason, was convicted of attempted unauthorized entry of an inhabited dwelling, in violation of La.R.S. 14:27 and La.R.S. 14:62.3. The trial court sentenced Megason to one year at hard labor.

Megason appeals. He argues that the State failed to prove his guilt beyond a reasonable doubt. He contends the State failed to prove his specific intent, and the evidence was insufficient to convict him. Because we find that the State failed to prove Megason's specific intent to enter an inhabited dwelling, we reverse his conviction and sentence and order the entry of an acquittal.

## I.

## ISSUE

We shall consider whether the State failed to prove Defendant's specific intent to enter an inhabited dwelling where Defendant, a plumber who was under the impression he forgot a tool at the victim's house, raised the window of the victim's house to get her attention when he was sure someone was at the house and where the victim initially had no intention of filing charges and inaccurately described Defendant as well as the details of conversations she had on the day of the incident.

## II.

## FACTS

Megason, a plumber employed by Robert Byles Plumbing, did some plumbing work at the home of Mary Christine Bryant in January of 2008. Megason was under the impression that he left his drill at Bryant's house at that time. Shortly thereafter, he was fired from Byles Plumbing for buying a drill on Byles' account

without permission. He went to work in New Orleans for several months. When he returned, Byles rehired him.

On May 8, 2008, Megason was working on a job for Byles with Jonathan Hansen. Megason left to get some supplies and decided to stop by Bryant's house to inquire, according to Megason, about his drill. Megason and Hansen drove by Bryant's home on a previous occasion, but, because there were no vehicles in the driveway, they did not stop.

On the day of the incident, Megason was "pretty sure" someone was in the house because the van was parked outside. That day, Bryant was at her home talking on the telephone. She became aware that someone was knocking on the door and ringing the doorbell. She then saw her bathroom window being pulled open. Bryant grabbed the blinds and saw Megason.

According to Bryant, Megason said he was supposed to fix some plumbing, but must have been at the wrong house. Megason asked Bryant if she remembered him, as he had done some work at her house in January. Bryant recalled him from January, but she had not called for a plumber on May 8. When, according to Bryant, Megason again said he must be at the wrong address, Bryant said he was trying to come in her window and told him to leave. Then, she slammed the window and locked it.

Bryant immediately called Megason's employer and told him his employee tried to break into her house. Bryant did not want to report the matter, but her husband, an employee of the Sheriff's Department, felt she should. Bryant then called the police.

When a Sabine Parish Sheriff's Deputy arrived at Bryant's home, she was visibly shaken. The deputy found no evidence of forced entry on any doors or

2

windows. Megason gave the deputy a statement saying he stopped by Bryant's home to see if he had left a tool there. He stated that after knocking at both the front and the back doors and the window, he noticed that the window was slightly opened. He then raised it to "just yell Hello" to get someone's attention and, instead, scared Bryant.

According to Megason, after Bryant pulled up the blind, he told her he was not sure he was at the right place, but he thought he left his drill the last time he worked there. Bryant was very upset, so Megason told her who he was and who employed him. He apologized, and Bryant told him to leave. Megason then called Robert Byles, the owner of Megason's employer, and asked to come by his house to tell him about the incident.

After speaking with Byles and learning that Bryant was thinking about filing charges, Megason called Bryant. He apologized again and tried to explain that he had no intention to enter her house and was simply trying to get her attention.

Megason called her telephone number a second time. He explained the incident to the man who answered the telephone. He then went to the Sheriff's Department to give a written statement. There, he was arrested. Even though Bryant had described the man at her house as stocky and bald, and Megason is "small and lanky," Megason never denied he was the person involved.

Megason apologized again at trial and acknowledged he "handled the situation the wrong way." A plumber for twenty years, he said he has previously stuck his "head in doors and hollered plumber." He maintained that he was simply trying to get Bryant's attention, that he was "truly sorry," and that he had no intention of breaking into the house.

Megason was candid about a prior burglary conviction. He said he went into a friend's unlocked home, took a gun, and pawned it. He planned to get the gun back before the friend returned from work offshore, but the friend returned early and reported the gun stolen. Megason also had "some history with drugs," including an arrest in September of 2007.

According to Byles, Megason contacted him on the day of the incident and repeated his account of the events. Byles testified that Bryant's house was not on the route to where Megason would have gone for supplies and that he knew nothing about Megason's loss of his drill.

Jill Speight, Byles' secretary, spoke to Megason and to Bryant twice on the date of the incident. Megason told Speight there had been a call for a plumber in the area, but Speight was not aware of it. Megason then repeated the incident to Speight. Nevertheless, he mentioned the lost drill only the second time Speight spoke with him.

When Speight spoke with Bryant, she told Bryant where the nearest company truck was in the area. That location was different from what Bryant testified Speight told her. Bryant also told Speight that "her guard was definitely up" on the day of the incident because a black man was standing at the end of her driveway a couple of days earlier. Bryant told Speight "it really freaked her out."

Lance Spears, Megason's employer at the time of trial, never had any problems with Megason. Spears kept money and checks at his business; there were cars and four wheelers in the parking lot all the time, along with easy access to "knives, stuff like that." Nothing was ever missing while Megason was employed by Spears, and Spears never had any customer complaints about Megason.

III.

## STANDARD OF REVIEW

The standard of review in a sufficiency of the evidence claim is "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged." *State v. Leger*, 05-11, p. 91 (La. 7/10/06), 936 So.2d 108, 170, *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279 (2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979); *State v. Captville*, 448 So.2d 676 (La.1984)).

IV.

## LAW AND DISCUSSION

Megason was convicted of an attempted unauthorized entry of an inhabited dwelling. Louisiana law defines one who attempts a crime as: "[a]ny person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object . . . ." La.R.S. 14:27(A). Thus, an attempted offense requires a showing of specific intent. *Id.*

Specific intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10(1). Because specific intent is a state of mind, it does not need to be proven by fact; it may be inferred from the circumstances and the actions of the defendant. *State v. Allen*, 99-320 (La.App. 5 Cir. 7/27/99), 742 So.2d 949. The existence of specific intent is for the trier of fact to determine, and review of this determination is correctly made under the *Jackson* standard. *Id.*

Louisiana law defines unauthorized entry of an inhabited dwelling as "the intentional entry by a person without authorization into any inhabited dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person." La.R.S. 14:62.3(A).

Certainly, Megason used poor judgment, and he readily admitted that. Bryant was undoubtedly startled and frightened when she encountered Megason raising her bathroom window. Nevertheless, she had no thought of filing charges until her husband, a Sheriff Department's employee, urged her to do so. She could not accurately describe the man she saw in her window. Similarly, according to Speight, Bryant did not accurately relate the conversation in which Speight told Bryant about the location of one of their employees. These circumstances suggest that she may not have been accurate about other pertinent details.

Megason expressed regret for his actions immediately after the incident. He made no attempt to hide what he had done and voluntarily called Byles to report the incident and apologized to Bryant. He voluntarily contacted the Sheriff's Department and gave a written statement that was consistent with his trial testimony.

This court concludes that the evidence does not establish Megason's specific intent to commit the crime of unauthorized entry of an inhabited dwelling. While Bryant's testimony may support some other criminal charge (criminal trespass, for example), Megason's testimony shows his lack of specific intent to commit the crime of unauthorized entry of an inhabited dwelling. The State did not present evidence sufficient to overcome Megason's testimony and show that he had the specific intent to commit the crime. Thus, the trial court erred in finding Megason guilty as charged.

## V.

## <u>CONCLUSION</u>

Megason's conviction is reversed. His sentence is vacated and set aside, and a judgment of acquittal is entered.

**CONVICTION REVERSED. JUDGMENT OF ACQUITTAL ENTERED.**