# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**12-1350**

**STATE OF LOUISIANA**

**VERSUS**

**ANTHONY ST. ROMAIN**

**********

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 165,486-B
HONORABLE WILLIAM BENNETT, DISTRICT JUDGE

**********

**JOHN E. CONERY
JUDGE**

**********

Court composed of Sylvia R. Cooks, James T. Genovese, and John E. Conery, Judges.

**AFFIRMED.**

**Charles A. Riddle, III
District Attorney
David Edwin Lafargue
Assistant District Attorney
12th Judicial District Court
Post Office Box 277
Marksville, Louisiana 71351
(318) 253-7521
COUNSEL FOR APPELLEE:
     State of Louisiana**

**Annette Fuller Roach**
**Louisiana Appellate Project**
**Post Office Box 1747**
**Lake Charles, Louisiana  70602-1747**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT/APPELLANT:**
       **Anthony St. Romain**

**CONERY, Judge.**

Defendant, Anthony St. Romain, was convicted of obstruction of justice, a violation of La.R.S. 14:130.1, on July 10, 2012. The trial court suspended imposition of his sentence pursuant to La.Code Crim.P. art. 893 and placed him on supervised probation for one year.

Defendant has appealed his conviction only, asserting two assignments of error:

I.
The evidence introduced at the trial of this case, when viewed under the *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) standard, was insufficient to prove beyond a reasonable doubt that Anthony St. Romain was guilty of the crime of obstruction of justice.

II.
Counsel representing Anthony St. Romain erred in failing to: 1) object when the State questioned witnesses about any statements made by Anthony St. Romain concerning the allegations in question or, 2) seek the suppression of the oral statements pre-trial. Appellant was prejudiced by the admission of the testimony concerning these alleged oral statements.

For the following reasons, we affirm the conviction.

## FACTS

Defendant was employed as a police officer with the Cottonport Police Department. On the evening of May 5, 2011, and morning of May 6, 2011, he was the supervising officer on duty with two others, Officer Travis Goudeau, who had not yet been P.O.S.T.-certified,[1] and Officer Ronald Heath.[2] Between 12:00 and 1:00 a.m., Officer Goudeau observed a vehicle run a stop sign, and he initiated a traffic stop. Officer Goudeau testified that, as the vehicle was stopping, he

_____

[1] P.O.S.T. is the acronym for the Louisiana Peace Officer Standards and Training Council.
[2] Officers Goudeau and Heath were no longer employed with the Cottonport Police Department at the time of trial.

observed an orange bottle being thrown out of the passenger-side window.[3] Defendant and Officer Heath subsequently responded to the scene of the traffic stop. After they arrived, Officer Goudeau picked up the bottle that had been thrown from the vehicle. Officer Goudeau opened the bottle and found that it held two cellophane bags, one containing three or four blue pills, and the other, a substance that appeared to be crack cocaine. Officer Goudeau testified that Defendant and Officer Heath saw the contents of the bottle.

Officer Goudeau testified that Defendant subsequently advised Officer Heath to return to patrol. Defendant then stepped away to have a conversation with the driver of the vehicle, Charles Hernandez, but Officer Goudeau could not hear what was said. Officer Goudeau testified Defendant told him that Hernandez could not be arrested because the drugs were not on him or in his vehicle. However, the only occupant of the car was Hernandez, and Officer Goudeau believed he had enough probable cause to make an arrest for illegal possession of a controlled dangerous substance. Officer Goudeau testified that he put the bottle and its contents in his patrol car, and he wrote Hernandez a citation for the traffic violation. Officer Goudeau further testified that, later that night, Defendant "said that he was going to come and get the possible narcotics and dispose of it. So later on that night he did come get it out of my unit and . . . I don't know what he did with it."

Officer Goudeau testified that once Defendant's shift ended, he and Officer Heath "figured something wasn't right," and they searched the police department,

---

[3]Officer Goudeau testified that although his patrol car was equipped with recording equipment, it was out of order at the time of this traffic stop.

4

including trash cans and a dumpster, for the bottle. He and Officer Heath completed a report that they both signed. The report read, in pertinent part:

> I ORDERED THE DRIVER TO STEP OUT OF THE VEHICLE THEN I NOTICED SOMETHING ORANGE COLORED BEING THROWN OUT OF THE PASSENGER SIDE WINDOW. . . . OFFICER HEATH AND OFFICER ST. ROMAIN THEN ARRIVED ON THE SCENE TO ASSIST. I THEN OBSERVED WHAT WAS THROWN OUT OF THE PASSENGER WINDOW WHEN I FOUND AN ORANGE MEDICINE BOTTLE UNLABELED. . . . OFFICER ST. ROMAIN ADVISED ME NOT TO MAKE AN ARREST OR PURSUE ANY CHARGES BECAUSE THE POSSIBLE NARCOTICS WERE NOT FOUND ON THE SUSPECT OR IN HIS VEHICLE. . . . MEDICINE BOTTLE CONTAINING POSSIBLE NARCOTICS WAS SECURED AND PLACED INTO MY PATROL CAR. LATER THAT MORNING OFFICER ST. ROMAIN CAME TO MY PATROL CAR AND TOOK POSSESSION OF THE BOTTLE CONTAINING THE POSSIBLE NARCOTICS AND STATED HE WAS GOING TO DISPOSE OF IT.

Officer Goudeau gave the report to Assistant Chief Donald Scully. To Officer Goudeau's knowledge, the bottle and its contents were never found.

Officer Heath testified that, on the date in question, he and Defendant assisted Officer Goudeau on a traffic stop. Officer Goudeau informed Officer Heath that the suspect threw something out the window of the vehicle. Officer Goudeau retrieved the object, which was a bottle that contained a bag of pills and a bag of cocaine. Hernandez then asked to speak with Defendant, but Officer Heath did not hear the conversation. Defendant subsequently told Officer Heath to return to patrol. Officer Heath returned to patrol because he, Defendant, and Officer Goudeau were the only officers working that night. Officer Heath testified that it was not unusual for Defendant to speak to a suspect before an arrest.

Officer Heath testified that he saw the contents of the bottle and believed them to be controlled dangerous substances. Additionally, Officer Heath felt there was probable cause to arrest Hernandez.

5

Officer Heath testified that, at the police department later that night, he heard Defendant talking to Officer Goudeau about disposing of something. Officer Goudeau later told Officer Heath Defendant had taken the bottle from him. Officer Heath testified that he and Officer Goudeau looked around for the bottle in the dumpster and trash cans but did not find it. They then completed a report. Officer Heath testified that because Defendant was a supervisor, it was appropriate for Defendant to take the evidence from Officer Goudeau. Officer Heath agreed that Officer Goudeau did not have a good reason to question Defendant's authority to take the bottle.

On May 6, 2011, Detective Chad Jeansonne of the Cottonport Police Department was called by Assistant Chief Scully who asked him to look into the traffic stop that had occurred the previous day. Detective Jeansonne testified that the assistant chief told him that the bottle was allegedly in Defendant's locker. Detective Jeansonne obtained a search warrant for the locker, but he did not find the bottle therein. Detective Jeansonne also testified that the bottle was not in the evidence locker or anywhere else that was checked.

Detective Jeansonne testified that he met with Officer Goudeau who told him that Defendant overrode his decision during the traffic stop and took the bottle he had found. Officer Goudeau told Detective Jeansonne that he felt Defendant's conversation with Hernandez was secretive because they spoke in a hushed tone. Officer Goudeau also told Detective Jeansonne that Defendant ordered him to give the bottle to Defendant. Detective Jeansonne testified, "that was completely against the protocol of the police department at that time or any department far as that goes that I'm aware of." Detective Jeansonne testified regarding the protocol for dealing with evidence seized during a traffic stop as follows:

Any type of evidence be it drug evidence or anything that constitutes evidence you know, law enforcement officers are taught from day one in their career to be highly mindful of what you do with the evidence. Now as far as the Cottonport Police Department protocol is that that evidence should be bagged, dated, taped with evidence tape, sealed and the officer that seizes that evidence has to put his initials on that seal so that once it's sealed you know, if it's broken then you know that there's a problem, someone other than that officer has had it. Then that evidence is then given to the evidence custodian who is the assistant chief of police, he has a key to the vault, which is a concrete room with a large steel door, it's entered into that vault, to that locker, and the date, the time the officer entering it, along with the assistant chief if he's there entering it, which he will be because he has the key to the vault, a description of that evidence, what it is, and then it's secured both with a pad lock and another steel bar across it to prevent anyone from going in there. So the chain of custody is very tight and it['s] suppose[d] to be accounted for through every stage, even when it's forwarded to the crime lab for further testing.

Detective Jeansonne felt there was probable cause to arrest Hernandez. However, he testified that the supervising officer would have the final call on that issue if there was a disagreement about whether probable cause existed. Detective Jeansonne then testified:

Officers can disagree on how they view a legal situation, but there is no disagreement as to how that evidence should be maintained and stored, that is without disagreement, that is mandated by the policy of the department and by laws of the State of Louisiana, so there's no disagreement of that.

Detective Jeansonne further testified that it would not be unusual for a supervisor to take evidence found by another officer.

Detective Jeansonne testified about speaking with Defendant on May 10, 2011, as follows:

I asked him point blank, I said, Anthony where are the drugs he said they're in my locker, I said that's a problem because we just opened your locker and they're not there, then he kind of reversed himself, he said well I destroyed it, I said okay do you want to come in to help me understand as to where you destroyed it, then he got frustrated and said well, I want to speak to an attorney, I don't want to talk about this anymore, I don't want to meet with you and I said that's fine, that is

7

your right and that's okay, the conversation just sorted [sic] ended right there, that was it.

Margaret Prater, a town council member, testified that she discussed Defendant's suspension from the police department with him. Prater testified that Defendant told her he put the bottle at issue in his locker, and she told the chief of police what Defendant said. Prater assumed that Defendant was referring to his locker at the police department. Prater was asked if she knew of any reason "they" would have to go after Defendant, and she stated, "It's been an ongoing thing, it's been a lot of friction between the chief and the officer for a while[,] and the chief has been trying to get rid of the [sic] St. Romain for a good while." Prater then testified that Defendant and the chief had a lot of problems, and the chief of police went to the city council three or four times in an attempt to fire Defendant. However, each request was denied.

Charles Jenkins, former Chief of Police in Cottonport, testified that there was friction between Defendant and Detective Jeansonne at one time.[4] Jenkins also testified that Detective Jeansonne once accused Defendant of selling drugs. Chief Jenkins told Detective Jeansonne to get him proof, and he would deal with it then. However, Detective Jeansonne never spoke of the matter again. While Jenkins was Chief of Police, Defendant was not written up, admonished, or disciplined.

Jenkins testified that when an officer seized evidence during the weekend, it was to be placed in the officer's locker until Monday. If the seizure occurred during the week, the officer was to complete the proper paperwork, and the evidence would be brought to the crime lab as soon as possible. All evidence was

---

[4] Jenkins was no longer the chief of police at the time of this incident.

8

to be placed in the proper bags, sealed, and the officer's name and the case it related to placed thereon. Jenkins testified that a driver who threw suspected cocaine from a vehicle could be arrested based on probable cause.

Defendant testified that he was placed on administrative leave without pay on May 9, 2011, and was still considered employed by the town of Cottonport at the time of trial.[5] Additionally, his commission had never been nullified.

Defendant testified that on May 5, 2011, he participated in the investigation of Hernandez, whom he did not know. Defendant testified that when he arrived at the scene, Hernandez was belittling Officer Goudeau, so he intervened. After Defendant spoke to Officer Goudeau, Defendant spoke with Hernandez. Prior to speaking with Hernandez, Defendant told Officer Heath to return to patrol.

Defendant described the events that took place as follows:

As Mr. Hernandez calls to speak to me, Mr. Goudeau came back and let him sign the citation and then after he put the ticket book in the vehicle, . . . he goes over there and . . . we're waiting on somebody to come pick up the vehicle because Mr. Hernandez doesn't have a driver['s] license, so we had to wait on somebody to release the vehicle to a person that has a driver[']s license. He goes, like I said about from here to the middle part of the Courtroom and picks up a medicine bottle, a little bottle by the carwash.

Defendant further testified:

He brings the bottle . . . he goes get the bottle, walked around goes get the bottle and he brings it back and I asked him, I said what's in the bottle, so he opens it up right there, I look in it and it was five blue pills, two little white looking substances, possibly cocaine, I don't know, it was inside two plastic . . . it was wrapped separately in two plastic paper and it was stuffed inside the pill bottle. So I asked Mr. Goudeau do you have your camera rolling so we can go back and play it on the spot, he said no, that the camera wasn't, he didn't have the card or the camera, something like this. I said alright, I said did

---

[5]By letter dated May 9, 2011, Defendant was notified that he was placed on administrative leave without pay as of that date, pending the results of an investigation. Defendant was told that he was not to perform any law enforcement duties, and he did not have any lawful arrest authority until the adjudication of the matter was complete.

you check the vehicle for any other, you know have you seen any other drugs and he said no I didn't go, I said well I'm going to walk around and see if there's any on [sic] view.

Defendant testified that the passenger window of Hernandez's vehicle was up, and the driver's window was down. Additionally, he testified that the bottle was in front of the vehicle, which he believed indicated that it could not have been thrown from this vehicle. Defendant testified that he would not have said Hernandez could not be arrested because the drugs were not found on his person. His decision not to arrest Hernandez was made because the bottle was found in a known drug area. He testified there was no probable cause to arrest Hernandez because the drugs were found near the carwash, and it was not unusual to see contraband in that area. He told Officer Goudeau that Hernandez did not need to be arrested because of where the drugs were located, and the matter would be turned over to an investigator.

Defendant testified that he asked Officer Goudeau at 3:45 a.m., in the parking lot of the police department, whether he had sealed the bottle in an evidence bag, and Officer Goudeau said he had not. He said Officer Goudeau turned the bottle over to him, because Officer Goudeau had never tagged evidence before. He told Officer Goudeau he could accompany him inside the building if he wanted to be shown how to bag and seal evidence. Defendant subsequently testified that he placed the bottle and its contents in an evidence bag; sealed, dated, and signed the bag; and placed it inside the locker where Tasers were kept in the bathroom area of the police department.

Defendant testified that he did not destroy the evidence. Defendant further testified that, the following day, he informed the assistant chief that he had evidence that needed to be turned over, and, because no one had been arrested, the

10

assistant chief told him to put the evidence in "the locker," and they would get to it the following day.

Defendant testified that on May 7, 2011, he was told by his wife to call Detective Jeansonne. Defendant spoke with Detective Jeansonne, who informed him that the district attorney had given him permission to investigate him for destroying evidence. Defendant testified that he was supposed to meet with Detective Jeansonne on Saturday, May 8, 2011, and he waited for an hour and forty-five minutes, but Detective Jeansonne did not show up. Defendant testified that, at that point, the evidence was still inside the Taser locker at the Cottonport Police Department. Defendant then took the evidence from the locker for his "safety because [he] thought it was a conspiracy with [the department]," and Detective Jeansonne told Defendant that he, Defendant, had destroyed it. Defendant felt "they," the department, would destroy the evidence and say he did it.

Defendant testified that, after he took the bottle, he put it in a locked briefcase and dropped it off at a friend's shed on Saturday, May 12, 2011. He said he called Charles Riddle, the district attorney, and told him where the evidence was. Defendant testified that the briefcase was in the courtroom during trial and alleged that it still contained the evidence he had placed inside it.

Defendant testified that he had permission to move the bottle because he was the supervisor at that time, and he did not see anything wrong with moving the evidence because he was a police officer. Defendant testified that he did not move the bottle in an attempt to protect Hernandez. Additionally, he said he never told Officer Goudeau he was going to destroy the evidence. He alleged that Detective

11

Jeansonne lied when he testified that Defendant said he destroyed the evidence. Defendant believed Detective Jeansonne had a vendetta against him.

Assistant Chief Scully testified that he never discussed the logging of any evidence regarding this case with Defendant. Additionally, he was not aware of any conspiracy against Defendant. However, that did not mean a conspiracy did not exist.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find no errors patent.

## DISCUSSION

### Sufficiency of Evidence

In his first assignment of error, Defendant contends the evidence introduced at the trial of this case, when viewed under the *Jackson v. Virginia*, 443 U.S. 307, standard, was insufficient to prove beyond a reasonable doubt that he was guilty of the crime of obstruction of justice.

With regard to sufficiency of the evidence, this court set forth the standard to be used in *State v. Lambert*, 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses. Therefore, the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations

12

under the *Jackson* standard of review. *See King,* 436 So.2d 559, citing *State v. Richardson*, 425 So.2d 1228 (La.1983).

The obstruction of justice statute, La.R.S. 14:130.1(A)(1), provides:

> A. The crime of obstruction of justice is any of the following when committed with the knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding as hereinafter described:
>
> (1) Tampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding. Tampering with evidence shall include the intentional alteration, movement, removal, or addition of any object or substance either:
>
> > (a) At the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation by state, local, or United States law enforcement officers; or
> >
> > (b) At the location of storage, transfer, or place of review of any such evidence.

Defendant contends the State did not prove he had the specific intent to tamper with evidence in an attempt to affect the investigation of Charles Hernandez.

> Specific intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10(1). Because specific intent is a state of mind, it does not need to be proven by fact; it may be inferred from the circumstances and the actions of the defendant. *State v. Allen*, 99-320 (La.App. 5 Cir. 7/27/99), 742 So.2d 949. The existence of specific intent is for the trier of fact to determine, and review of this determination is correctly made under the *Jackson* standard. *Id.*

*State v. Megason*, 10-112, p. 5 (La.App. 3 Cir. 10/6/10), 47 So.3d 31, 34.

On appeal, Defendant contends the State failed to prove he tampered with evidence with the specific intent to distort the results of any criminal investigation. He asserts the evidence was removed from the Taser locker days after the

13

investigation into his actions had begun, and he removed the evidence only to avoid its destruction by others. Defendant asserts his fears were founded on friction between himself, the chief of police, and Detective Jeansonne. He contends there was no evidence that his actions were an attempt to distort the results of the criminal investigation against Hernandez.

Defendant further argues that his employment with the police department was never terminated, and his certification as a police officer was still valid at the time of trial; thus, the State failed to show that he lacked authority to remove the evidence from the Taser locker. Defendant also argues the State failed to show that he acted outside his authority as the supervising officer when he obtained the evidence from Officer Goudeau. Defendant contends his conversation with Hernandez did not prove he had the specific intent to tamper with evidence, as no one testified as to what the two discussed, their mannerisms, or the length of the conversation.

In response, the State contends Officer Goudeau's testimony was sufficient to convict Defendant. Additionally, the evidence that Officer Goudeau turned over to Defendant was never found or submitted to the crime lab, as it should have been. Further, Hernandez was never arrested. The State avers the jury disregarded Defendant's testimony, and the evidence was overwhelming, as Defendant engaged in a peculiar private conversation with Hernandez at the scene, prevented Officer Goudeau from making an arrest, took the evidence from Officer Goudeau, and did not put the evidence into proper storage. The State asserts the jury could infer specific intent from the circumstances.

The jury found Defendant guilty of obstruction of justice, thus finding Defendant had the specific intent to distort the results of a criminal investigation.

14

Specific intent may be inferred from the circumstances of a case and actions of the defendant. *State v. Spears*, 05-964 (La. 4/4/06), 929 So.2d 1219. Defendant's actions in ordering Officer Goudeau not to arrest Hernandez, combined with his actions in seizing the evidence and never turning it in to be processed through the proper channels, are sufficient to show specific intent. This conclusion is supported by the testimony of Officer Goudeau and Detective Jeansonne, who testified regarding Defendant's statements that he would destroy or did destroy the evidence, thus making the evidence unavailable. Although Defendant testified he brought the bottle to court in a briefcase, that briefcase was not opened, and neither the bottle nor its contents were produced for the jury. The jury clearly made a credibility determination in this matter, and that credibility determination will not be second-guessed by this court. This assignment of error has no merit.

**Ineffective Assistance of Counsel**

In his second assignment of error, Defendant contends defense counsel erred in failing to object when the State questioned witnesses about any statements made by him concerning the allegations in question or in failing to seek the suppression of the oral statements prior to trial.

> The issue of ineffective counsel is more appropriately addressed in an application for post-conviction relief, where an evidentiary hearing can be conducted in the trial court. *State in the Interest of A.B.*, 09-870 (La.App. 3 Cir. 12/9/09), 25 So.3d 1012. However, where an ineffective assistance claim is raised on appeal, this court may address the merits of the claim if the record discloses sufficient evidence to rule on it. *Id.* If this court considers a claim of ineffective counsel on appeal, Defendant must satisfy a two-part test. He must first show that counsel's performance was deficient and next, that the deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

*State v. Teno*, 12-357, p. 10 (La.App. 3 Cir. 11/7/12), 101 So.3d 1068, 1075.

15

A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Strickland v. Washington*, 466 U.S. [668,] 689, 104 S.Ct. [2052,] 2065 [(1984)].

If an alleged error falls "within the ambit of trial strategy, it does not establish ineffective assistance of counsel." *State v. Bienemy*, 483 So.2d 1105, 1107 (La.App. 4th Cir. 1986). Moreover, "[w]hile opinions may differ on the advisability of such a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful." *State v. Brooks*, 505 So.2d 714, 724 (La.1987), *cert. denied*, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363(1987).

*State v. Stallworth*, 08-1389, pp. 7-8 (La.App. 4 Cir. 4/29/09), 11 So.3d 541, 545-56, *writ denied*, 09-1186 (La. 1/29/10), 25 So.3d 829.

Defendant argues that the statements he made to Detective Jeansonne on May 7, 2011, were not admissible, and defense counsel erred in not objecting to the statements or seeking to have the statements declared inadmissible at a pretrial hearing. Defendant asserts defense counsel should have objected to the following testimony by Detective Jeansonne:

[T]hen he kind of reversed himself, he said well I destroyed it, I said okay do you want to come in to help me understand as to where you destroyed it, then he got frustrated and said well, I want to speak to an attorney, I don't want to talk about this anymore[.]

Defendant asserts the investigation of wrongdoing by a police employee requires the adherence to the standards set out in La.R.S. 40:2531, and any statement made by him during an administrative investigation is not admissible in a criminal proceeding. Louisiana Revised Statutes 40:2531 provides, in pertinent part:

B. Whenever a police employee or law enforcement officer is under investigation, the following minimum standards shall apply:

16

. . . .

(5) No statement made by the police employee or law enforcement officer during the course of an administrative investigation shall be admissible in a criminal proceeding.

Defendant asserts he was prejudiced by Detective Jeansonne's testimony, as the testimony damaged his credibility because it suggested that he changed his mind about what happened to the evidence when confronted with the fact that it was not located where he said it was. The State asserts La.R.S. 40:2531 governs administrative investigations and is not applicable to criminal investigations such as that conducted by Detective Jeansonne. The State further asserts the record does not contain sufficient information to address Defendant's claim.

Defense counsel's actions were within the realm of trial strategy. Defendant testified that he took the evidence out of the Taser locker as a result of the conversation he had with Detective Jeansonne informing him that he was being investigated for destroying evidence. That conversation was relied on by defense counsel to allege Defendant removed the evidence because others were out to get him. Additionally, as a result of Defendant's denial that he destroyed the evidence, Detective Jeansonne's testimony may have been admissible as impeachment evidence pursuant to La.Code Crim.P. art. 607.

Defendant's claim does not support a finding of deficient performance by defense counsel. Accordingly, this assignment of error lacks merit.

## DISPOSITION

For the foregoing reasons, we affirm the conviction of Defendant, Anthony St. Romain, for obstruction of justice.

**AFFIRMED.**

17