NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA 18-278

STATE OF LOUISIANA

VERSUS

JOSHUA DAVID EVANS

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 16-CR 000980
HONORABLE KEITH R.J. COMEAUX, DISTRICT JUDGE

**********

BILLY HOWARD EZELL
JUDGE

**********

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and Phyllis M. Keaty, Judges.

CONVICTIONS AND SENTENCES AFFIRMED; REMANDED WITH INSTRUCTIONS.

Cooks, J., dissents for reasons stated in the dissent in *State of Louisiana v. Elvin Bryant Jinks, Jr.*, 2019 WL 1929961 (La.App. 3 Cir. 5/1/19) __So.3d__.

**Annette Fuller Roach**
**Louisiana Appellate Project**
**P. O. Box 1747**
**Lake Charles, LA 70602-1747**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Joshua David Evans**

**M. Bofill Duhe**
**District Attorney, Sixteenth Judicial District Court**
**W. Claire Howington**
**Craig Colwart**
**Assistant District Attorneys, Sixteenth Judicial District Court**
**300 Iberia St., Suite 200**
**New Iberia, LA 70560**
**(337) 369-4420**
**COUNSEL FOR APPELLEE:**
**State of Louisiana**

**EZELL, Judge.**

On August 9, 2016, the State filed a bill of information charging Defendant Joshua David Evans with attempted second degree murder, a violation of La.R.S. 14:27 and 14:30.1; simple criminal damage to property, a violation of La.R.S. 14:56; and illegal use of weapons, a violation of La.R.S 14:94. The parties selected a jury on August 8, 2017. The next day, the jury heard evidence and returned verdicts of guilty for illegal use of weapons and attempted second degree murder. The charge of simple criminal damage to property was not presented to the jury and was ultimately nolle prossed.

On December 1, 2017, the trial court denied Defendant's motion for new trial. On December 5, 2017, the court sentenced him to twenty years at hard labor for attempted second degree murder and two years at hard labor for illegal use of a weapon. Subsequently, the State filed a bill of information charging Defendant as a habitual offender. On July 13, 2018, the trial court conducted a hearing and adjudicated him as a second habitual offender. On the same date, the court vacated Defendant's twenty-year sentence for attempted second degree murder and sentenced him to eighteen years at hard labor for the habitual offender adjudication. The court further ordered that the sentence run concurrent with the two-year sentence imposed for illegal use of a weapon and concurrent with an unrelated conviction.

Defendant now seeks review by this court, assigning six errors. After review, we find the convictions and sentences should be affirmed.

**FACTS**

On May 27, 2016, the victim Akeem Rhine was living with his girlfriend Myiesha Leon, their infant son, and another child who was Defendant's daughter.

On that date, Rhine called Leon from work and they conversed via speaker phone. Rhine could hear that Defendant was at his residence. He objected to Defendant's presence without a prior announcement. Rhine testified he did not want to interfere with Defendant seeing his daughter, but Rhine expected him to call before showing up.

Rhine and Defendant texted one another during the day; Defendant called Rhine as he was getting off work, and the two men argued. When Rhine got home, Leon was sitting in her vehicle in the parking lot. He tried to show her the series of texts he and Defendant had exchanged. She was not receptive and drove away to pick up one of her sons. Rhine followed her; as they pulled away, he noticed Defendant and three other men on the opposite side of the parking lot near a black Ford Taurus. Rhine was texting Leon as he drove and accidentally ran into her car. They both drove home, but they got into an argument. She drove away again, and he followed her again. They stopped at a nearby four-way stop, Rhine pulled up alongside her, then noticed the same Taurus he had seen earlier was at the corner; Defendant got out and shot at Rhine. Rhine and Leon both drove away. Rhine turned wide and drove into a nearby cemetery, striking a tombstone. He returned to the road and continued to drive away. He soon saw two deputies in their vehicle and reported the crime.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there is one error patent. Additionally, the court minutes of sentencing require correction.

First, the court minutes of sentencing indicate Defendant was informed that he has two years in which to file an application for post-conviction relief. This is

2

verified by the sentencing transcript. Louisiana Code of Criminal Procedure Article 930.8(A) provides defendant has two years *after the conviction and sentence become final* to seek post-conviction relief. Although the court minutes of the subsequent habitual offender sentencing indicate Defendant was told he has two years from the "date [the] judgment becomes final" to file an application for post-conviction relief, the transcript from that proceeding indicates he was simply told he had two years. "[W]hen the minutes and the transcript conflict, the transcript prevails." *State v. Wommack*, 00-137, p. 4 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, 369, *writ denied*, 00-2051 (La. 9/21/01), 797 So.2d 62.

In *State v. Conway*, 12-525 (La.App. 3 Cir. 11/7/12), 101 So.3d 1132, and *State v. Julien*, 13-1327 (La.App. 3 Cir. 5/21/14), 139 So.3d 1152, *writ denied*, 14-1406 (La. 5/15/15), 169 So.3d 383, this court found an advisement that defendant had two years to apply for post-conviction relief was insufficient; thus, it directed the trial court to inform defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to defendant within ten days of the rendition of the opinion and to file written proof in the record that defendant received the notice. Therefore, the trial court is directed to inform Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate notice to him within ten days of the rendition of this opinion and to file written proof into the record indicating that Defendant received the notice.

We also find the court minutes concerning Defendant's sentence for illegal use of a weapon require correction. The sentencing minutes reflect that the court originally imposed a sentence of twenty years at hard labor for attempted second degree murder and a two-year hard labor sentence for illegal use of a weapon. The minutes then state, "[s]aid sentence is to be served without the benefit of probation

3

or parole and is to run concurrent with each other. . . ." However, the sentencing transcript indicates that only the attempted second degree murder sentence was imposed without benefit of parole, probation, or suspension of sentence. As discussed above, the transcript prevails when a conflict exists. Accordingly, the trial court is ordered to correct the sentencing minutes to accurately reflect that the sentence for illegal use of a weapon does not contain a denial of probation or parole.

**ASSIGNMENT OF ERROR NUMBER ONE**

In his first assignment of error, Defendant argues the State's evidence was insufficient to support his convictions. Specifically, he argues the evidence that he was the shooter was insufficient. He also questions whether intent to kill was established. He notes that Akeem Rhine was the sole identifying eyewitness. Defendant correctly cites the established analysis:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the Jackson standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Further, he notes that a conviction for attempted second degree murder requires proof of a specific intent to kill and that a conviction for illegal use of a weapon requires that death or great bodily harm be foreseeable. Thus, Defendant presents this court with two alternative arguments: first, there was insufficient proof that he was the shooter; second, for purposes of the attempted murder charge, if his identity as the shooter was proved, there was insufficient proof that he had the specific intent to kill; for the purposes of the illegal discharge of a weapon charge, if his identity was proved, then the State adduced insufficient evidence that harm to Rhine was foreseeable. He acknowledges the well-established jurisprudence that a lone witness's testimony can support a conviction.

However, he also cites the equally well-established principle that when the identity of the offender is at issue, any reasonable probability of misidentification must be negated. He notes that the only witness to identify him as the shooter was Rhine. He argues that no physical evidence linked him to the shooting and that Rhine was angry with and jealous of him. The alleged anger and jealousy stemmed from the fact that Rhine was Leon's boyfriend and Defendant was her ex-boyfriend and the father of one of her children. The general circumstances indicated Rhine may have been concerned that Leon and Defendant still had a relationship or that Defendant still wanted to have a relationship with Leon.

Defendant notes that Rhine and Leon were both eyewitnesses to events immediately surrounding the shooting and both testified at trial. After conflicts earlier in the day, Leon sat crying in her car in the parking lot of the apartment complex where she and Rhine lived. Rhine knocked on her window, and she drove away. Rhine followed her. Leon stopped at a four-way stop and noticed a black Taurus pull up to the stop on her left. Leon recognized the Taurus as belonging to

a friend of Defendant's. She saw three men inside but could not identify any of them. A man in a black hoodie exited the car, but she could not see his face as it was too dark by that time. Rhine pulled up next to Leon and tried to talk to her but then she heard gunfire; she made a right turn and fled the scene. In her rearview mirror, she saw Rhine drive into a nearby cemetery; he backed up and caught up to her. Rhine then drove off a separate way. Leon picked up her aunt then returned home, where police were waiting and took her to the police station to give a written statement. She testified that at some point after the shooting, she called Rhine to see if he was all right. He accused her of setting him up to be shot.

Rhine testified that he pulled up beside Leon at the four-way stop and noticed a black Taurus at the corner. Defendant got out of the Taurus with a gun and started shooting. Although it was dark by that time, Rhine stated there was enough light from a nearby streetlight to make the identification. He and Leon both turned; a bullet or bullets broke his window; Rhine ducked. He turned wide, went into a nearby cemetery, and struck a headstone. He backed out of the cemetery and drove away. He saw police officers in a nearby parking lot and reported what happened.

Defendant argues that since Rhine had pulled up beside Leon at the intersection to talk to her, he would not have been looking left toward the shooter. Defendant also notes that that Leon testified it was too dark to identify the shooter. Defendant acknowledges that Rhine told officers that the shooter was "Josh," the father of Leon's child. However, Defendant suggests that Rhine's identification of him was unduly influenced by the earlier acrimony between them and from seeing Defendant earlier in the day.

6

Defendant states: "A conviction cannot stand on the testimony of a single witness whose testimony contains internal contradictions." However, this is an overstated extrapolation from the case he cites, *State v. Robinson*, 02-1869, p. 16 (La. 4/14/04), 874 So.2d 66, 78-79, *cert. denied*, 543 U.S. 1023, 125 S.Ct. 658 (2004):

> Further, this court's authority to review questions of fact in a criminal case does not extend to credibility determinations made by the trier of fact. La. Const. Art. 5, § 10(B); *State v. Williams*, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of witnesses in whole or in part. *State v. Bosley*, 691 So.2d 347; *State v. Rogers*, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. *State v. White*, 28, 095 (La.App.2d Cir.5/8/96), 674 So.2d 1018, *writ denied*, 96-1459 (La.11/15/96), 682 So.2d 760, *writ denied*, 98-0282 (La.6/26/98), 719 So.2d 1048.

Defendant fails to demonstrate internal conflicts or irreconcilable differences within Rhine's testimony. The conflicts and differences shown are those with the testimony of Leon or matters upon which Defendant feels Rhine was incredible, such as being able to identify him by the illumination of a streetlight or the question of which way Rhine was looking when the offender opened fire. As shown by the jurisprudence already cited, such questions of credibility belong to the trial jury. Thus, this argument lacks merit.

As for Defendant's claim that intent to kill was not established, we observe he fired multiple gunshots in the victim's direction. This court has stated:

> "Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10(1).
>
> > Because specific intent is a state of mind, it does not need to be proven by fact; it may be inferred from the

circumstances and the actions of the defendant. *State v. Allen*, 99-320 (La.App. 5 Cir. 7/27/99), 742 So.2d 949. The existence of specific intent is for the trier of fact to determine, and review of this determination is correctly made under the *Jackson* standard. *Id.*

*State v. Megason*, 10-112, p. 5 (La.App. 3 Cir. 10/6/10), 47 So.3d 31, 34. "It is well-settled that the act of pointing a gun at a person and firing the gun is an indication of the intent to kill that person." *State v. Thomas,* 10-269, p. 7 (La.App. 3 Cir. 10/6/10), 48 So.3d 1210, 1215, *writ denied*, 10-2527 (La.4/1/11), 60 So.3d 1248, *cert. denied*, [565] U.S. [859], 132 S.Ct. 196, 181 L.Ed.2d 102 (2011).

Mr. Prejean testified at trial that he "looked at a .45 in [his] face" and that Defendant then shot him in the leg. We find that pointing a gun in someone's face and then shooting him, albeit the bullet entered the leg, is an indication of intent to kill.

. . . .

This court has held "[a]iming a firearm directly at a victim is indicative of intent to kill or inflict great bodily harm." *State v. Clark*, 93-1470, p. 3 (La.App. 3 Cir. 10/5/94), 643 So.2d 463, 466, *writ denied*, 94-2715 (La.2/9/95), 649 So.2d 418 (citing *State v. Maxey*, 527 So.2d 551 (La.App. 3 Cir.1988), *writ denied*, 541 So.2d 868 (La.1989)). However, this court has also recognized "that a shooting at close range does not prove specific intent." *State v. Carmouche*, 12-1052, pp. 15-16 (La.App. 3 Cir. 4/3/13), 117 So.3d 136, 146.

In *Carmouche*, this court looked to additional facts to conclude the defendant possessed the specific intent to kill. The defendant and the victim had an acrimonious relationship and had scuffled just prior to the shooting when the victim threw the first punch. Thus, the defendant had a motive for the shooting. Also, the defendant fled the scene and the city to avoid capture.

*State v. Lively*, 13-883, pp. 11-12 (La.App. 3 Cir. 2/12/14), 153 So.3d 1061, 1068-69, *writ denied*, 14-755 (La. 1/16/15), 157 So.3d 1124 (third alteration in original).

Defendant's act of getting out of a nearby car with a weapon and firing multiple shots in the victim's direction formed a sufficient basis for the jury to rationally infer specific intent the kill. This argument and the assignment as a whole lack merit.

We will next address Defendant's sixth assignment of error out of order, as it alleges double jeopardy and thus, could lead to reversal of one of the convictions if found to have merit.

**ASSIGNMENT OF ERROR NUMBER SIX**

In this assignment of error, Defendant argues that his convictions for attempted second degree murder and illegal use of a weapon violate constitutional protections against double jeopardy. The State observes the fourth circuit addressed a similar argument:

> Mr. Mahogany contends that "[t]he convictions for both attempted second degree murder and the intentional discharge of a firearm violated the prohibition against double jeopardy." Mr. Mahogany does not dispute that the *Blockburger* test, discussed below, is not met; rather, he contends that the "same evidence test" was met. He contends that the same evidence—his shooting at Mr. Brazile with the intent to do him harm—was used to prove both offenses and that this violated double jeopardy. He thus contends that his conviction for intentional discharge of a firearm must be vacated.

> Both the Fifth Amendment to the United States Constitution and Article 1, § 15 of the Louisiana Constitution guarantee that no person shall be twice placed in jeopardy for the same offense. *See* La. C.Cr.P. art. 591 (providing that "[n]o person shall be twice put in jeopardy of life or liberty for the same offense"); *see also* La. C.Cr.P. art. 596. Although La. C.Cr.P. art. 596 speaks of double jeopardy relative to a second prosecution, the double jeopardy prohibition also protects an accused from multiple punishments for the same criminal conduct. *State v. Gibson*, 03-0647, p. 8 (La. App. 4 Cir. 2/4/04), 867 So.2d 793, 798-99; *State v. Murray*, 00- 1258, p. 3 (La. 9/18/01), 799 So.2d 453, 454-55 (citing *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969)) (holding that "[t]he Double Jeopardy Clauses of the federal and Louisiana constitutions not only prohibit successive trials for the same offense but also 'protect [ ] against multiple punishments for the same offense.' "). This principle thus covers the situation presented here of a defendant charged, tried, convicted, and sentenced in one case for two offenses arising out of the same criminal conduct.

> In *State v. Magee*, 11-0574, p. 75 (La. 9/28/12), 103 So.3d 285, 335, the Louisiana Supreme Court succinctly set forth, as follows, the two tests employed by Louisiana courts to determine whether a defendant's right against double jeopardy has been violated:

When the same act or transaction constitutes a violation of two distinct statutory provisions, in assessing whether there are two offenses or only one, the Supreme Court uses the "additional fact" test *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). Under this test, the provisions of each statute are analyzed to determine whether each requires proof of a fact which the other does not. *Id. . . .*

. . . .

Applying either the *Blockburger* test or the "same evidence test," no double jeopardy violation is established here. In a prosecution for attempted second degree murder, the State must prove that the defendant: (1) intended to kill the victim and (2) committed an overt act tending towards the accomplishment of the victim's death. La. R.S. 14:27(30.1). In a prosecution for illegal use of a weapon during a crime of violence, the State is required to prove: (1) that the defendant intentionally, or through criminal negligence, discharged a firearm, (2) that it was foreseeable that it may result in death or great bodily harm to a human being, and (3) that the defendant did so while committing, attempting to commit, conspiring to commit or otherwise trying to get someone to commit a crime of violence. La. R.S. 14:94.

Comparing the elements necessary for a conviction of attempted second degree murder with the elements necessary for a conviction of discharge of a weapon during a crime of violence reveals that each of the offenses requires proof of additional facts that the other does not. Attempted second degree murder does not require the discharge of a firearm; discharge of a weapon does. Attempted second degree murder requires evidence of specific intent to kill; discharge of a weapon during a crime of violence does not. Moreover, attempted second degree murder does not require an underlying crime of violence; discharge of a weapon does. Thus, the offenses of attempted second degree murder and discharge of a weapon during a crime of violence each contain an element of proof that the other does not require. The prosecution for those two offenses therefore would not constitute double jeopardy under the *Blockburger* test, as Mr. Mahogany acknowledges.

*State v. Mahogany*, 17-377, pp. 26-30 (La.App. 4 Cir. 7/26/17), 225 So.3d 489,

507-10, *writ denied*, 17-1416 (La. 5/18/18), 242 So.3d 1225 (footnote omitted)

(alterations in original).

When the fourth circuit decided *Mahogany*, Louisiana courts still used two tests to assess double jeopardy claims; however, the supreme court has since stated that the *Blockburger* test is the sole test to be used in such analyses. *State v. Frank*, 16-1160 (La. 10/18/17), 234 So.3d 27. Considering the *Blockburger* analysis in *Mahogany*, we find the current assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, Defendant argues the trial court's instruction to the jury unduly conflated two of the charged offenses, attempted second degree murder and illegal discharge of a firearm. He focuses on the following passage from the instruction:

> In order to convict the defendant of the offenses charged, you must find beyond a reasonable doubt one or more of the following: that he had specific intent to kill Akeem Rhine and that he intentionally discharged a firearm and it was foreseeable that such discharge might result in death or great bodily harm to a human being.

We note, however, there were no objections to the jury instructions. As the State observes, the controlling statute is La.Code Crim.P. art. 801(C), which states:

> A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefor shall be stated at the time of objection. The court shall give the party an opportunity to make the objection out of the presence of the jury.

Pursuant to the clear dictates of the article, this assignment was not preserved for review.

## ASSIGNMENT OF ERROR NUMBER THREE

In his third assignment of error, Defendant argues the trial court erred in some of its evidentiary rulings. The first ruling he complains of is the trial court's limitation of his trial counsel's cross-examination of Rhine. The parties both

acknowledge that the appropriate standard of review is abuse of discretion. In *State v. Young*, 51,101, pp. 10-11 (La.App. 2 Cir. 2/15/17), 216 So.3d 236, 242-43, the second circuit stated:

> [T]he admissibility of a witness's prior convictions and any extrinsic evidence is subject to the balancing test required by La. C.E. Art. 403. *State v. Tolbert*, 03–0330 (La. 06/27/03), 849 So.2d 32, 38. A trial court is afforded great discretion in controlling the scope and extent of cross-examination and its rulings will not be disturbed absent a finding of an abuse of discretion. *State v. Coleman*, 32,906 (La.App. 2 Cir. 04/05/00), 756 So.2d 1218, 1244. Improper questioning under La C.E. Art. 609.1 is subject to harmless error analysis.

We note the relevant colloquy:

**CROSS EXAMINATION**

BY MR. BURTON:

Q. Akeem were you ever in Pennsylvania?

A. Yes, sir.

Q. Okay. In Pennsylvania, did you get a conviction?

A. Yes, sir.

Q. What were you convicted of?

A. Simple assault.

Q. You were convicted of assault, correct?

A. Yes, sir.

Q. In Pennsylvania, it's a felony, correct?

A. I think.


BY MR. COLWART:

Objection, Your Honor. Can we approach the bench?

12

BY THE COURT:

> Approach.

* * *

(Colloquy at bench begins)

BY MR. COLWART:

> We're going to ask for a special instruction. It may be a felony in Pennsylvania, but it's a misdemeanor in Louisiana. I'm not so sure it's a felony in Pennsylvania.

BY MR. BURTON:

> What is the basis of this?

BY MR. COLWART:

> Can I finish? I'm sorry for interrupting you, but --

BY MR. BURTON:

> The jurors heard this. We need to step out where they don't hear, Judge.

(Colloquy at the bench concludes)

* * *

BY THE COURT:

> Let's retire the jury.

(Jurors retired from courtroom)

BY THE COURT:

> Hold on just a second. I want to look at something. The only thing that can be referred to is the name of the crime for which he was convicted and the date of conviction.

BY MR. COLWART:

> Correct. So I'm going to ask for an instruction. First of all, the point he was making was that the victim

13

here, Mr. Akeem Rhine, was convicted of a felony. I've got two objections. Number one, I want an instruction, but first of all, we don't know if it's a felony. The only reason why defense attorney is concluding it's a felony is because he was given one year suspended. In Louisiana, misdemeanors are generally six months suspended. Your Honor knows there's a bunch of northern states, Yankee states, that misdemeanors you can get up to a year. So we don't know if it's a felony or a misdemeanor or not. Number two, we would ask for an instruction that even if it is a felony in Pennsylvania, that in Louisiana it's just a misdemeanor.

MR. BURTON:

Your Honor, as far as number one, I asked the witness was it a felony, which he stated, yes, it was. It makes no difference what it is in Louisiana. It's a felony that he was convicted of. I'm allowed to bring that information to the knowledge of the jury.

BY MR. COLWART:

What the defense is allowed to do --

BY THE COURT:

Time out, Mr. Colwart I think you're wrong on this one. Just listen to me. Evidence of the name of the crime of which he was convicted and the date of the conviction is admissible if the crime was punishable by death or imprisonment in excess of six months.

BY MR. COLWART:

Okay. What are you reading from?

BY THE COURT:

Under the law under which he was convicted.

BY MR. COLWART:

What are you reading from?

BY THE COURT:

What?

BY MR. COLWART:

What Code article are you reading?

BY THE COURT:

What?

BY MR. COLWART:

609.

BY MR. COLWART:

Okay. Fine.

BY THE COURT:

And the Court determines that the probative value of admitting the evidence outweighs the prejudicial effect to a party. So if he was subjected to in excess of six months, it's admissible.

BY MR. COLWART:

I understand. But the point is, is that the defense is making a point that it's a felony, okay. Number one, we don't know --

BY MR. BURTON:

I didn't make the point that it was a Felony, Your Honor. I asked --

BY MR. COLWART:

Then why did you say it was a felony?

BY MR. BURTON:

I did not say it was.

BY THE COURT:

Just a second. He asked a question if it was a felony, which was an appropriate question --

15

BY MR. COLWART:

Right. Because the victim doesn't know.

BY MR. BURTON:

Your Honor --

BY MR. COLWART:

He didn't go to law school.

BY MR. BURTON:

Wait. Wait.

BY THE COURT:

It was asked and answered, so it's in evidence.

BY MR. COLWART:

Right.

BY THE COURT:

I'm not going to fix it.  There was no simultaneous objection.

BY MR. COLWART:

There's got to be a reason why he asked that question, and the reason is so he can argue that Akeem Rhine is not worthy of belief because he's been convicted of a felony. What I'm saying is, is that we don't know if it's a felony or not. The defense attorney could have done his research --

BY THE COURT:

Well, find out if it's a felony or not.

BY MR. COLWART:

What?

BY THE COURT:

Find out if it's a felony or not.

16

BY MR. COLWART:

He could have done his research to find that out.

BY MR. BURTON:

Your Honor --

BY THE COURT:

I asked you to find out to let me know if there should be a corresponding instruction. I'll make a decision on that. The question has been asked and answered, and it's going in. Okay?

BY MR. COLWART:

Okay.

BY THE COURT:

That's all. Bring the jury back.

BY MR. COLWART:

Wait, wait, wait. Before you do that, Your Honor, I have to make another argument. You're reading from Code Article 609 which is obviously using the Louisiana standard for --

BY MR. BURTON:

Your Honor, we've made arguments. You've ruled.

BY THE COURT:

I'm going to let him bring something else up if there's something else. There's credibility of witnesses, 609, and impeachment. That's impeachment of a witness.

BY MR. COLWART:

Right. I understand. I understand. Can I ask for a recess to go research Pennsylvania law to see if it's a felony or not?

17

BY THE COURT:

You've got other assistants.

BY MR. COLWART:

I need a minute or two to go make the request.

BY THE COURT:

Go tell them.

(Interruption in proceeding)

BY THE COURT:

They're going to look it up?

BY MR. COLWART:

Yeah.

BY THE COURT:

Good enough. Let's bring the jury back.

(Jurors seated in courtroom)

BY THE COURT:

State waives polling of the jury.

BY MR. COLWART:

State waives.

BY THE COURT:

Defense?

BY MR. BURTON:

Defense waives, Your Honor.

BY THE COURT:

Proceed.

(Examination continues)

18

BY MR. BURTON:

Q.     Akeem, I just asked you if you've been to Pennsylvania and [sic]you convicted of a crime. You stated you were.  You also stated that it was a felony, correct?

A.     I didn't state it was felony.  I said --

Q.     Yes, sir, you did.  You said yes.

A.     I said aggravated assault.  I didn't say a felony.

Q.     And then I said is that a felony and you said yes.

A.     I didn't say that.

Q.     Are you changing your statement now because of what you heard in the courtroom --

BY MR. COLWART:

Objection; argumentative.

BY THE COURT:

I'm going to allow it.

A.     (By witness) No, everything's being recorded.

BY MR. BURTON:

Q.     I'm asking you a question.  Are you changing your statement now because of what you heard --

A.     No.  Everything's being recorded, right?

Q.     Sir, let me finish my question, then you answer.

A.     Everything's being recorded.

Q.     Sir, can I finish my question --

BY THE COURT:

Mr. Rhine, let him finish his question, then you can answer.

A.     (By witness) Yes, sir.

19

BY MR. BURTON:

Q.     My question to you is, are you changing your statement now because of what you heard in the courtroom a few seconds ago?

A.     No.

Q.     Then my statement to you is you said it was a felony.

BY MR. COLWART:

        Objection. That's not a question.

BY THE COURT:

        That's not a question.

BY MR. BURTON:

Q.     So you were convicted of aggravated --

A.     Assault.

BY MR. COLWART:

        Objection.  It's not what he was convicted of.

BY MR. BURTON:

        That's what he said.  Your Honor --

BY MR. COLWART:

        In the RAP Sheet that I provided to the defense attorney --

BY MR. BURTON:

        May we approach?

BY MR. COLWART:

        He's quoting false information --

20

BY MR. BURTON:

> May we approach? Your Honor, he's putting evidence into the record. I object to that and I ask for a mistrial. He's putting evidence --

BY MR. COLWART:

> You have it, Mr. Burton. You have his record.

BY MR. BURTON:

> I do not.

BY THE COURT:

> Stop! Retire the jury.

(Jurors retired from the courtroom)

BY THE COURT:

> Mr. Rhine, you go outside the courtroom.

> Now, I've been very patient with both of you. I'm not going to be patient anymore. If we have anymore outbursts from either one of you, okay, y'all are going to open up y'all checkbook or go to jail.

BY MR. BURTON:

> Your Honor --

BY THE COURT:

> Now, that's it.

BY MR. BURTON:

> Yes, sir. Your Honor may I please speak about what just was done? Your Honor, he's going to tell what the RAP sheet is? I asked a question to the defendant [sic]. The defendant [sic] answered the question. I can only go by what he tells me on the stand.

BY THE COURT:

That's correct, Craig. He did answer the question that he was convicted of aggravated assault. Now, I didn't make that up. He didn't make that up. Whether it's a correct statement or not, according to the RAP sheet, he has the right to cross examine him about it Okay? Maybe it's not on the RAP sheet. I don't know. But he did say aggravated assault when asked a second time. I heard him.

BY MR. COLWART:

That's correct, Your Honor. But my objection is the --

BY THE COURT:

Then make your objection. You don't have to be flying up in the air with your hand raised saying it's a simple assault. You don't have to be doing -- y'all are arguing between each other instead of addressing me and y'all are making a showboat in front of the jury.

BY MR. COLWART:

And, for that, I apologize, Your Honor. The reason why I objected the way I objected is because I provided the defense counsel with Mr. Akeem Rhine's RAP sheet, gave him an opportunity to take notes, as per your order. I provided the RAP sheet to him. He came to my office. He took notes. On the RAP sheet, it says simple assault.

BY THE COURT:

I understand that, Mr. Colwart, but he testified it was an aggravated assault when questioned again about it.

BY MR. COLWART:

But that does not allow the defense attorney, knowing full well that the conviction is for simple assault, to act like it was for an aggravated assault.

BY THE COURT:

How do we know he doesn't have one that's maybe not on the RAP sheet?

22

BY MR. BURTON:

> Exactly, Judge.

BY MR. COLWART:

> He's got -- Judge?

BY THE COURT:

> I don't know that, Craig. I don't know it for a fact.
> I have no earthly idea. Maybe the RAP sheet has been
> expunged. I don't know that. He has a right to explore
> what the witness says.

During the bench conference, the court mistakenly cited La.Code Crim.P. art. 609 instead of La.Code Crim. P. art. 609.1 as authority but ruled in defense counsel's favor, noting the evidence that had entered the record at that point would remain in the record. The trial court admonished both counsel regarding their behavior in front of the jury. Defendant moved for a mistrial due to the prosecutor's statements before the jury. The court denied the motion but stated it would revisit the issue if the State failed to clarify the relevant facts on redirect. When cross-examination continued, Rhine admitted to two Louisiana convictions: one for destruction of property and a marijuana conviction as a juvenile. On redirect, Rhine refreshed his memory by reading over a copy of his Pennsylvania plea agreement, then testified he was convicted of simple assault. The State sought to enter a copy of the Pennsylvania documentation into the record, but the court sustained Defendant's objection. Defendant did not re-urge the motion for mistrial. However, Defendant's motion for new trial included an argument that the motion for mistrial should have been granted. In the motion for new trial, as in the current appeal, Defendant alleged his case had been prejudiced by hearing the prosecutor make statements about Rhine's record in front of the jury; in effect giving unsworn

23

testimony.  Defendant also complains that he was not allowed to "delve into" detail of Rhine's prior convictions.

Although the State agrees with Defendant that the trial court erred by relying on La.Code Evid. 609, it cites the text of La.Code Evid. art. 609.1, which states, in pertinent part:

> **A. General criminal rule.**  In a criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions, subject to limitations set forth below.
>
> **B. Convictions.**  Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.
>
> **C. Details of convictions.**  Ordinarily, only the fact of a conviction, the name of the offense, the date thereof, and the sentence imposed is admissible.  However, details of the offense may become admissible to show the true nature of the offense:
>
> (1) When the witness has denied the conviction or denied recollection thereof;
>
> (2) When the witness has testified to exculpatory facts or circumstances surrounding the conviction;  or
>
> (3) When the probative value thereof outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury.

As the State points out, Rhine admitted to the Pennsylvania assault conviction, which was clarified to be simple assault, as well as a Louisiana conviction for destruction of property, and a marijuana-related conviction when he was a juvenile.  As the State observes, the juvenile conviction could have been ruled inadmissible pursuant to La.Code Evid. art. 609.1(F).  It appears Defendant was able to address all of the information he was entitled to under the relevant article.  For the reasons discussed, we find the trial court did not abuse its

discretion in its handling of the evidence regarding Rhine's prior convictions, including its treatment of the motion for mistrial. This argument lacks merit.

Returning to Defendant's other argument, the substance of it can easily be addressed since the State clarified that Rhine's Pennsylvania conviction was for simple assault. Thus, the prosecutor's earlier assertion regarding the conviction was correct. Therefore, there is little likelihood that the prosecutor's outburst prejudiced Defendant's case. Thus, this argument lacks merit.

Next, Defendant complains that Rhine and the State violated the court's sequestration order. At trial, defense counsel alleged the prosecutor spoke to a deputy and the victim at the same time, despite the rule of sequestration. The prosecutor acknowledged that while he was talking to a deputy, the victim walked up to them, but they did not stop the conversation. In response to the court's questioning, the prosecutor stated that he and the deputy were discussing the possibility of locating security cameras, presumably in the area of the shooting. The court denied Defendant's motion for mistrial because there was no security camera footage introduced at trial. On appeal, Defendant points to no use of security camera evidence in the trial. Thus, as a factual matter, the conversation had no substantive bearing on the trial or any of the testimony. Consequently, Defendant has failed to show prejudice. Therefore, the trial court did not err in denying the motion for mistrial. *See State v. Holden*, 45,038 (La.App. 2 Cir. 1/27/10), 30 So.3d 1053, *writ denied*, 10-491 (La. 9/24/10), 45 So.3d 1072.

Next, Defendant argues the trial court erred by allowing the jury to view maps on which Rhine and Leon had made notations. After the jury retired for deliberations, it asked to see two Google-map photographs depicting the area of the crime scene. Defense counsel said, "I might have an objection," noting that the

maps had marks on them that had been made by witnesses. The court treated this

statement as an objection and overruled it, explaining that the marks were not

testimonial.

The fifth circuit has explained:

> La. C.Cr.P. art. 793 generally prohibits "access to any written evidence" for its verbal content and prohibits the repeating of testimony to jurors during deliberations. *State v. Brooks*, 01-0785 (La. 1/14/03), 838 So.2d 725, 727 (per curiam). The Louisiana Supreme Court has recognized that jurors may inspect physical evidence in order to arrive at a verdict, but they cannot inspect written evidence to assess its verbal contents. *State v. Perkins*, 423 So.2d 1103, 1109 (La. 1982).

> This Court has found that the general rule as expressed by Article 793 is that the jury is not to inspect written evidence except for the sole purpose of a physical examination of the document itself to determine an issue, which does not require the examination of the verbal contents of the document. *State v. Soler*, 93-1042 (La. App. 5 Cir. 4/26/94), 636 So.2d 1069, 1081, *writ denied*, 94-1361 (La. 11/4/94), 644 So.2d 1055. The danger that La. C.Cr.P. art. 793 seeks to avoid is that the testimony or written evidence in question will be given undue weight. *State v. Miller*, 10-718 (La. App. 5 Cir. 12/28/11), 83 So.3d 178, 198, *writ denied*, 12-0282 (La. 5/18/12), 89 So.3d 1191, *cert. denied*, 568 U.S. 1157, 133 S.Ct. 1238, 185 L.Ed.2d 177 (2013).

> In *State v. Lyles*, 03-141 (La. App. 5 Cir. 9/16/03), 858 So.2d 35, 48–49, the defendant was convicted of two counts of indecent behavior with a juvenile. On appeal, the defendant contended that the trial court erred in allowing the jury to view, during jury deliberations, a diagram drawn by the victim. The defendant also contended that allowing the jury to view the diagram during deliberations was not harmless error.

> At trial, the victim drew a diagram depicting the layout of the room in which the offense occurred and the location of other individuals in the room, including the defendant. The diagram was received into evidence without objection. This Court found that unlike a photograph, which was a reproduction of a physical object or scene, the diagram in its case was drawn by a witness/victim in conjunction with her testimony. It asserted that the jury's viewing of the diagram was for its verbal contents, i.e., the victim's testimony regarding the description of the room and its occupants. Therefore, this Court found that the trial court erred in allowing the jury to view the diagram. However, it further found that the error was harmless in that it did not

26

depict what occurred or any other significant fact nor did it bear directly on the element of the crime. This Court noted that the evidence of each element of the offenses was clear.

In the instant case, State's Exhibit 18 is a one-page document that contains several pictures and writing on it. The bottom right hand portion contains the drawing the jury wanted to see, namely, a picture of a person behind bars. Next to that picture is written, "You're a monster . . ." Above that picture is a drawing of another person, and next to that person is written, "I'm going to kill you when I get out of this place!" In the top right hand corner is a gavel with the words, "Not guilty!" written next to it. In the middle of the page is a drawing of what appears to be a girl, and next to that drawing are the words, "This is all just a bad dream . . . and you're never waking up!!!" In the top left hand corner is a drawing of a girl with the words, "We didn't gather enough evidence, so we think you have been lying to us and there was no case." Below that picture is a drawing of a person, who it appears has cut marks on her arms. In the bottom left hand corner, there is a drawing of an individual, and there are words next to it stating, "Look at what you've done!!!" At the top of the exhibit in the middle are the words, "Was it because of me? Yeah, it was me . . ."

In this case, our review reveals that the trial judge erred by permitting the jury to view State's Exhibit 18 during jury deliberations. That exhibit contained numerous writings that duplicated the victim's testimony by written words contained on that page. As such, we find that the jury could have viewed the exhibit for its verbal contents, i.e., the victim's feelings and emotions about defendant wanting to kill her, about going to court, and about committing suicide, which she had testified about at trial. Thus, when the trial judge allowed the jury to view this document with the victim's writings, the jury was allowed "access to . . . written evidence" for its verbal content, which is prohibited by La. C.Cr.P. art. 793.

Nevertheless, we further find that this error was harmless in that the exhibit did not depict what occurred during the crimes themselves or any other significant fact nor did it bear directly on an element of the crime. *See Lyles, supra*. Here, as noted above, without viewing the document in question, a rational trier of fact could have found that the evidence was sufficient under the *Jackson* standard to support defendant's conviction of aggravated rape of a known juvenile under the age of thirteen. Although this argument has merit, any error is harmless.

*State v. Doucet*, 17-200, pp. 13-16 (La.App. 5 Cir. 12/27/17), 237 So.3d 598, 608-09, *writ denied*, 18-77 (La. 10/8/18), 253 So.3d 789, *writ denied*, 18-196 (La. 11/5/18), 255 So.3d 1052.

The present case clearly hung upon the credibility of Rhine, and the exhibits do not appear to be of a kind that would render him more believable.  Even with the marks on them, they more likely served the purpose of helping jurors visualize the scene.  Therefore, this argument lacks merit.

## ASSIGNMENT OF ERROR NUMBER FOUR

In his fourth assignment of error, Defendant argues the trial court erred by denying his motion for new trial, which was based upon La.Code Crim.P. art. 851(B)(2) and (B)(3).  As the State observes, the supreme court has discussed the appropriate law and analysis:

> Grounds for seeking a new trial are set forth in La.C.Cr.P. art. 851, which provides in pertinent part:
>
> . . . The court, on motion of the defendant, shall grant a new trial whenever:
>
> (1)  The verdict is contrary to the law and the evidence;
>
> (2)  The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
>
> (3)  New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
>
> (4)  The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or

28

> (5)   The court is of the opinion that the ends of justice
>        would be served by the granting of a new trial,
>        although the defendant may not be entitled to a
>        new trial as a matter of strict legal right.

La.C.Cr.P. article 851 also states the new trial motion is based on the supposition that an injustice has been done to the defendant. A defendant has the burden to show an injustice was done to him, or the motion will be denied, no matter what allegations are raised.

A motion for new trial alleging newly discovered evidence requires the defendant to prove additional allegations of fact, listed in La.C.Cr.P. art. 854:

> (1)   That notwithstanding the exercise or reasonable
>        diligence by the defendant, the new evidence was
>        not discovered before or during the trial;
>
> (2)   The names of the witnesses who will testify and a
>        concise statement of the newly discovered
>        evidence;
>
> (3)   The facts which the witnesses or evidence will
>        establish; and
>
> (4)   That the witnesses or evidence are not beyond the
>        process of the court, or are otherwise available.

We have previously held:

> Thus, a new trial shall be granted based on Article
> 851(B)(3) when: (1) new evidence was discovered after
> trial; (2) the new evidence is material; (3) the failure to
> discover the evidence was not due to a lack of diligence
> on the part of the defense; and, (4) had the evidence been
> introduced, the verdict or judgment of guilty probably
> would have been changed.

La.C.Cr.P. art. 858 limits our review of the trial court's ruling on the new trial motion: "In reviewing the granting or the refusal to grant a new trial, neither the appellate nor the supervisory jurisdiction of the Supreme Court may be invoked, except for error of law." Therefore, we review the trial court's ruling on the new trial motion only for legal error. An abuse of the trial court's discretion in ruling on a new trial motion on the ground of newly discovered evidence presents a question of law.

This court will attach great weight to the exercise of the trial judge's discretion. "On the other hand, the discretion vested in the

29

trial court must be exercised in whole-hearted good faith and be guided by the statutes, not by the court's private opinion of what the statute ought to be. Where the exercise of discretion is arbitrary and not judicial, and the judgment is unjust, it will be set aside." It has been described as "self-evident," that when "discretion is inappropriate an incorrect decision is not entitled to deference. For example, a trial court has no discretion or choice to disregard statutory rules . . . in deciding a new trial motion."

This court explained the duty of a trial judge considering a new trial motion based on newly discovered evidence in *State v. Talbot*[, 408 So.2d 861 (La.1980) (on rehearing)]:

> The scope of the trial judge's duty toward the motion for a new trial based upon the new evidence must be kept in mind. It was not for him to determine the guilt of [another alleged suspect] or the innocence of [the defendant]; it was not for him to weigh the new evidence as though he were a jury, determining what is true and what is false. The judge's duty was the very narrow one of ascertaining whether there was new material fit for a new jury's judgment. If so, will honest minds, capable of dealing with evidence, probably reach a different conclusion, because of the new evidence, from that of the first jury? Do the new facts raise debatable issues? Will another jury, conscious of its oath and conscientiously obedient to it, probably reach a verdict contrary to the one that was reached on a record wholly different from the present, in view of evidence recently discovered and not adducible by the defense at the time of the original trial?

We have found that the trial judge's duty is an objective test, "in that the trial judge does not sit as the ultimate arbiter of the resolution of the case once the new evidence is considered, that is, the trial court does not weigh the evidence." In other words, "[t]he role of the trial court is to review the evidence constituting the State's case, not to determine the sufficiency of the evidence, but to evaluate the effect of the newly discovered evidence."

*State v. McKinnies*, 13-1412, pp. 7-10 (La. 10/15/14), 171 So.3d 861, 868-69

(footnotes omitted) (first, second, fourth, fifth, and sixth alterations in original).

There were three main arguments in the motion for new trial. First, Defendant argued that his motion for mistrial, discussed in the previous assignment, should have been granted. As noted earlier, he argues his case had

been prejudiced by the actions of the prosecutor who waved a piece of paper in the air during the argument over Defendant's prior criminal record. This argument lacks merit for the reasons discussed in an earlier assignment in regard to this issue.

Defendant's second argument is that the State did not disclose to him until after trial that Rhine had told the State before trial that he wanted to drop the charges. Further, Defendant argues this fact was "*Brady* material" that should have been disclosed to him pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963), which requires the State to disclose evidence favorable to the defense. At the hearing on the motion for new trial, the trial court ruled that Rhine's request to drop the charges did not affect Rhine's testimony because it was not based upon any assertion that Defendant did shoot at him. Rather, Defendant had apparently contacted Rhine and given reasons for the shooting, which led the victim to ask to drop the charges. Also, the court observed that the decision to pursue the case was in the control of the State, not Rhine.

The present case clearly hinged upon Rhine's testimony. Thus, any fact bearing upon that testimony was subject to *Brady* disclosure. Nonetheless, if Rhine's request to drop the charges had been revealed to the defense and in turn put before the jury during trial, any discussion of the request would have included the assertion that Defendant did in fact shoot at Rhine or at least that he admitted to Rhine that he shot at him. As already noted, the victim's basis for asking to drop the charges was that Defendant had given reasons for the shooting, not that he denied the shooting. Therefore, the court did not abuse its discretion in its ruling on this issue, and this argument lacks merit.

Defendant's third argument is that Leon lied during her trial testimony because she was afraid of Rhine, who was abusive. At the hearing on Defendant's motion for new trial, Leon's affidavit was submitted in lieu of testimony. In the affidavit, she asserted that Rhine was not in a position to see who the shooter was, that an earlier collision she had with Rhine was not an accident as he had struck her car deliberately and told her to lie about it, that when she had called Defendant about the accident he had said he was at his sister's house, and that while she could not identify the shooter, she had noted that none of three men she had seen in the Taurus at the scene had Defendant's skin tone.

The court ruled that the assertions in the affidavit were not "newly discovered" and they could have been reached via cross-examination. Leon did not identify the shooter during her trial testimony. Also, Louisiana courts generally view recantation of trial testimony with suspicion. *State v.* Clayton, 427 So.2d 827 (La.1982). As discussed earlier, Leon testified at trial. As discussed in the *Jackson* review in the first assignment, the existing testimony left a legitimate question, albeit one resolvable in the State's favor, regarding whether Rhine was in a position to the see the shooter. Thus, this facet of the case was not hidden from the jury. Leon's assertion in her affidavit was merely an explicit version of what some trial evidence implied. Thus, it could be viewed as cumulative. Also, the record shows that Leon was an ambivalent State witness who provided little positive evidence to advance the State's case. Another matter raised in the affidavit was a phone call Leon allegedly made to Defendant in which he indicated he was not in an area near the crime scene. However, as the trial court pointed out, this information, if true, would have been known to Defendant himself and thus was

not newly-discovered. The trial court did not abuse its discretion in its ruling. This assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER FIVE

In his fifth assignment of error, Defendant argues his trial counsel was ineffective for failing to object to the jury instructions and for failing to object to the non-unanimous verdict. As he correctly observes, any claim of ineffective assistance of counsel is subjected to the two-part test set forth by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). First, it must be demonstrated that counsel's performance was deficient. Second, said deficiency must have prejudiced the defendant at issue.

The portion of the instructions that Defendant alleges was erroneous was cited earlier in our discussion of the second assignment of error. Our reading of that passage suggests it was neither incorrect not confusing; it named the offenses and correctly stated the intent level for each. Also, as the State suggests, the instructions as a whole correctly stated the relevant law, including the elements of each offense. It seems unlikely that the short passage Defendant now attacks would have misled or confused the jury in light of the overall jury charge. Defendant has not demonstrated either component of *Strickland*.

Regarding the non-unanimous verdict, the State correctly notes that Louisiana jurisprudence has upheld the constitutionality of such verdicts. The supreme court has stated:

> This Court has previously discussed and affirmed the constitutionality of [Louisiana Code of Criminal Procedure] Article 782 on at least three occasions. In *State v. Jones*, 381 So.2d 416 (La.1980), we ruled that Article 782 did not violate the Sixth and Fourteenth Amendments. Later, in *State v. Simmons*, 414 So.2d 705 (La.1982), we found that Article 782 did not violate either the Fifth or

33

Fourteenth Amendments. Finally, in *State v. Edwards*, 420 So.2d 663 (La.1982), we again affirmed the statute's constitutionality.

*State v. Bertrand*, 08-2215, 08-2311, p. 6 (La. 3/17/09), 6 So.3d 738, 742. The recent constitutional change requiring unanimous verdicts has no effect on the current case. As noted earlier, the trial took place in August of 2017. Although the state constitution has since been amended to require unanimous verdicts, that amendment explicitly does not apply to felonies committed prior to January 1, 2019. La.Const. art. 1, § 17.

This assignment of error lacks merit.

## CONCLUSION

Defendant's convictions and sentences are affirmed. The trial court is instructed to correctly inform Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to Defendant within ten days of the rendition of the opinion and to file written proof in the record that Defendant received the notice. Additionally, the trial court is ordered to correct the sentencing minutes to accurately reflect that the sentence for illegal use of a weapon does not contain a denial of probation or parole as reflected in the court minutes of sentencing.

**CONVICTIONS AND SENTENCES AFFIRMED; REMANDED WITH INSTRUCTIONS.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.

34